UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SALVATORE CLARK HARKER, | No. 21-20284 (NLH) (MJS) |
| Plaintiff, | OPINION |
| v. | |
| SHANNON CORNELIUS, et al., | |
| Defendants. | |

APPEARANCE:

Salvatore Clark Harker
1 Westbrook Dr.
#G-104
Swedesboro, NJ 08085

   *Plaintiff Pro se*

HILLMAN, District Judge

   Plaintiff Salvatore Clark Harker filed this complaint under 42 U.S.C. § 1983 alleging "excessive abuse of judicial authority, official oppression, false arrest, false imprisonment, [and] unlawful extradition," as well as denial of medical care and "the tort[s] of kidnapping, assault and battery, pain and suffering, mental anguish and negligence." ECF No. 1 at 1.

   At this time, the Court must review the complaint in accordance with 28 U.S.C. § 1915(e)(2) to determine whether it

1

should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court will allow Plaintiff's denial of medical care claims to proceed.  The remainder of the claims will be dismissed for failure to state a claim.

I.   BACKGROUND

According to the complaint, "[o]n or, about November 8, 2019, the plaintiff, Salvatore Clark Harker arrived at the Logan Township Police Department, in Bridgeport New Jersey, to post bail for failure to appear in court for a motor vehicle violation in New Jersey."  ECF No. 1 at 19.  Plaintiff "was informed that he could not post bail due to an outstanding no bail fugitive warrant in Northampton County Pennsylvania.  Moreover that the Northampton County Sherriff confirmed, that they will extradite him to Pennsylvania."  Id.  Plaintiff was "transported and remanded over to the custody of the Salem County Correctional Facility ["SCCF"] along with a copy of the warrant so that extradition proceedings could be scheduled in the Gloucester County Superior Court."  Id.

The SCCF Intake Officer interviewed Plaintiff and took down Plaintiff's medical conditions and current medications.  Id.  Plaintiff was "placed in a holding cell, in the isolation ward,

2

along with eleven other inmates, this holding cell was designed to house only five inmates.  It contained 1 toilet, five bunk[s] and twelve mattresses." Id.  Over the next six days, Plaintiff "repeatedly requested to be seen by a doctor to inform him of the urgency of his medical needs in order to receive his necessary medications . . . ." Id. at 20.  Plaintiff was moved to A-Block of the Intake Unit on November 14, 2019 "where he was given Librium and told that due to protocol he would have to wait to be seen by the nursing staff." Id.  He was moved to C-Block of the Observation Unit on November 15, 2019. Id.  His requests to see a doctor were denied. Id.

Plaintiff was moved to B-Block in General Population on November 18, 2019. Id.  He was taken to the Medical Department for assessment. Id.  "Plaintiff described his medical condition and medications prescribed by his primary health care provided for COPD, emphysema, asthma, cholesterol, and anxiety.  The clinical staff stated that the County does not treat pre-trial detainees for these types of conditions due to budget constraints." Id.

Plaintiff appeared in court for his motor vehicle violation on approximately November 19, 2019. Id. at 21.  "[T]he prosecutor read the charge's [sic] against the plaintiff wherein the plaintiff's counsel stated that discovery had not been provided to the defense and was not prepared to proceed.  A

3

court date was rescheduled for December 8, 2019.  The plaintiff was returned to the Salem County Correctional Facility." Id. He returned to court on November 20, 2019 for his extradition hearing.  Id.  The court "explained the [process] for extradition, informed the plaintiff of the charges in that Chester County [Pennsylvania] wanted plaintiff to answer to the charges of DUI related offenses as a felony." Id.  Plaintiff informed the court that the charges were out of Northampton County, not Chester County.  Id.  "The Court stated that Chester would pick up the plaintiff and convey him to the appropriate authorities.  The plaintiff waived extradition." Id.  The court told Plaintiff that Chester County had ten days to pick him up, and Plaintiff returned to SCCF after signing the extradition order.  Id.

Plaintiff was taken before a different New Jersey Superior Court judge on November 27, 2019.  Id. at 22.  Defendant Shannon Cornelius, a Gloucester County Assistant Prosecutor, informed the court that "we are here to correct some typos on the prior extradition order in that Northampton County Pennsylvania wanted [Plaintiff] to answer for DUI related offenses, moreover that the charges were reduced from a felony to a misdemeanor, furthermore that they would need until December 3, 2019 to pick [Plaintiff] up." Id.  Plaintiff objected to the request, stating he was due to be released on November 29, 2019.  Id.

4

"The plaintiff explained that he already informed the court that the warrant was from Northampton County Pennsylvania and the judge ordered the extradition for Chester County to pick up the plaintiff." Id. The court did not amend the extradition order. Id. On November 29, 2019, Plaintiff asked Defendant Michael Hand, a SCCF correctional officer, if he was going to be released soon. Id. Defendant Hand told Plaintiff he would have to ask the booking sergeant, Defendant Andrew Biddle. Id. Defendant Biddle told Plaintiff that Plaintiff "wasn't being released in that it wasn't up to him." Id. at 23.

On December 3, 2019, Plaintiff "was told to gather his belongings in that he was being released, at which time he was escorted to the property room and was given his cloth's [sic] key's and wallet." Id. "The plaintiff was then directed to the sally port where he was accosted by two men who stated that they were Northampton County PA. detective's, wherein the plaintiff took a defensive posture and backed away from them and informed them that the time had expired on the warrant . . . ." Id. The detectives "produced an order faxed from the Gloucester County Prosecutor. The order was tampered with in that it had a notation to P/U 12-3-19." Id. at 24. Plaintiff objected to the arrest and was told that if he did not assume the stop-and-frisk position he would be charged with resisting arrest. Id.

5

Plaintiff complied and was taken to the Northampton County Jail in Easton, Pennsylvania.  Id.

Plaintiff asks the Court to issue a declaratory judgment against Defendants Cornelius, SCCF Warden John Cuzzue, SCCF Deputy Warden Hobart Riley, Biddle, Hand, Jane Doe Medical Staff, and SCCF Corrections Officer John Doe for "official oppression, unlawful restraint, false arrest, false imprisonment, unlawful extradition, and kidnapping, the denial of adequate medical care" as well as "assault and battery, pain and suffering, mental anguish, negligence and undue hardship under state law."  Id. at 27.  He also seeks damages.

II.  STANDARD OF REVIEW

To survive a sua sponte screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the Plaintiff's claims are facially plausible.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will

6

not do.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the Plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

III. DISCUSSION

A.  Denial of Medical Care

Plaintiff alleges that he was denied adequate medical care during his stay at SCCF. Claims by pretrial detainees for failing to provide adequate medical care arise under the Fourteenth Amendment Due Process Clause and are analyzed "under the standard used to evaluate similar claims brought under the Eighth Amendment[.]" Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). Plaintiff must allege facts indicating "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Id. (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). Plaintiff alleges he requested medical treatment for COPD, emphysema, asthma, cholesterol, and

7

anxiety.  ECF No. 1 at 20.  He alleges "[t]he clinical staff stated that the County does not treat pre-trial detainees for these types of conditions due to budget constraints."  Id.  The Court will permit the denial of medical care claim to proceed against Defendants Jane Doe Medical Director, Cuzzue, Riley, and Salem County[1] this time.[2]

B.   Extradition Proceedings

Plaintiff alleges violations in connection with the extradition procedures.  He argues that Northampton County's time to pick him up from SCCF expired on November 29, 2019, making his December 3, 2019 arrest and his imprisonment between November 29, 2019 and December 3, 2019 unlawful.  He alleges Defendants conspired to falsify the extradition order.

---

[1] Plaintiff names SCCF as a defendant in this matter.  A correctional facility is not a "person" within the meaning of § 1983.  As Plaintiff alleges it was a county policy to deny certain medical treatments to pre-trial detainees, the Court considers this claim to be raised against Salem County under Monell v. Department of Social Services, 436 U.S. 658 (1978) along with Plaintiff's claims against the jail officials in their official capacities.

[2] The Court's preliminary review under 28 U.S.C. § 1915 does not determine whether the allegations in the complaint would survive a properly supported motion to dismiss filed by a defendant after service.  See Richardson v. Cascade Skating Rink, No. 19-08935, 2020 WL 7383188, at *2 (D.N.J. Dec. 16, 2020) ("[T]his Court recognizes [a] § 1915(e) screening determination is a preliminary and interlocutory holding, subject to revision at any time prior to entry of final judgment." (internal quotation marks omitted)).

8

The Extradition Clause of the U.S. Constitution requires that "[a] person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."  U.S. Cont. art. IV, § 2, cl. 2.  "The Extradition Clause was intended to enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed."  Michigan v. Doran, 439 U.S. 282, 287 (1978).  "Interstate extradition was intended to be a summary and mandatory executive proceeding . . . ."  Id. at 288.

Congress set forth the procedures to carry out the extradition process in the Extradition Act.  18 U.S.C. § 3182.  Under the Extradition Act, "when the executive authority of one state demands of the executive authority of another state a person as a fugitive from justice, and produces an indictment or affidavit made before a magistrate which charges the person with a crime, the executive authority of the asylum state is required to arrest the fugitive, notify the demanding state, and confine the fugitive for a minimum of 30 days."  Soto v. Bartkowski, No. 11-3631, 2014 WL 4854605, at *4 (D.N.J. Sept. 30, 2014).  New Jersey and Pennsylvania have implemented these procedures through their adoption of the Uniform Criminal Extradition Law,

9

N.J.S.A. § 2A:160-9, et seq.; 42 Pa.C.S.A., § 9121-9171. "Thus the Uniform Act carries with it the preemptive lineage of the United States Constitution and a Congressional enactment." State v. Morel, 602 A.2d 285, 287 (N.J. Super. Ct. App. Div. 1992). "It follows that any provision in the New Jersey Constitution or New Jersey Rules of Court that is contrary to the rendition process of the Uniform Act must yield to the Act." Id.

Under the Uniform Act, a prisoner has the right to appear before a criminal court judge wherein he must be informed of his right to counsel and the ability to contest the legality of his arrest. N.J.S.A. § 2A:160-18. Petitioner waived this right: "I, specifically state that I do not desire to contest my return to the demanding State, and do hereby WAIVE all my rights incidental to the extradition proceedings and agree to be delivered to the Agent(s) of the demanding State that I may return to that jurisdiction as provided by the Uniform Criminal Extradition [N.J.S.A. § 2A:160-10]." ECF No. 7 at 20. Once Plaintiff waived his right to challenge Pennsylvania's authority to extradite him, New Jersey officials were required to turn him over to Pennsylvania officials. See 18 U.S.C. § 3182 (requiring executive authority of asylum state to "cause the fugitive to be delivered to such agent [of the demanding state] when he shall appear"); N.J.S.A. § 2A:160-30 ("If and when such consent has

10

been duly executed . . . [t]he judge shall direct the officer having such person in custody to deliver forthwith such person to the duly accredited agent or agents of the demanding state, and shall deliver or cause to be delivered to such agent or agents a copy of such consent.").

Under federal law, Pennsylvania had thirty days to retrieve Plaintiff from New Jersey.  18 U.S.C. § 3182 ("If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged."); Soto v. Bartkowski, No. 11-3631, 2014 WL 4854605, at *4 (D.N.J. Sept. 30, 2014) ("[T]he executive authority of the asylum state is required to arrest the fugitive, notify the demanding state, and confine the fugitive for a minimum of 30 days.").  Federal law supersedes the New Jersey court's instructions.  As alleged by Plaintiff he was first arrested in New Jersey on November 8, 2019 and held no later than December 3, 2019, less than 30 days.  Plaintiff has not stated a claim for relief under § 1983 even after accepting all the alleged facts as true.

"'[F]ailure to comply with established procedures does not deprive the fugitive of any protected right.'"  Rivera v. Algarin, 350 F. App'x 703, 709 n.10 (3d Cir. 2009) (quoting Barton v. Norrod, 106 F.3d 1289, 1295 (6th Cir. 1997)) (alteration in original).  "[T]o establish a § 1983 claim for monetary relief, including a showing of damages, [Plaintiff]

11

will have to prove that he suffered some deprivation of liberty greater than that which he would have suffered through extradition in full compliance with the UCEA." Knowlin v. Thompson, 207 F.3d 907, 909 (7th Cir. 2000). Plaintiff has not done so.

"Where a person has been charged with a crime in another state, New Jersey law expressly authorizes arrest without a New Jersey warrant." Allen v. Wrightson, 800 F. Supp. 1235, 1239 (D.N.J. 1992) (citing N.J.S.A. § 2A:160-22). Pennsylvania's authority to arrest and extradite Plaintiff did not evaporate on November 29, 2019. See 18 U.S.C. § 3182 ("Nothing in this section shall be deemed to limit the rights of the accused person to return voluntarily and without formality to the demanding state, nor shall this waiver procedure be deemed to be an exclusive procedure or to limit the powers, rights or duties of the officers of the demanding state or of this state."); Stynchcombe v. Whitley, 242 S.E.2d 720, 721 (Ga. 1978) ("We see no reason why the warrant should become stale or void merely because it was not executed during the period of detention allowed to facilitate arrest thereunder.").

Plaintiff was still charged with a crime in Pennsylvania and could have been lawfully rearrested and extradited from New Jersey on those charges. See Rivera, 350 F. App'x at 709 n.10 ("[T]he Commonwealth could have cured the arguable procedural

12

flaw by releasing and immediately re-arresting Rivera."). "Because Plaintiff has not alleged facts showing that defendants violated the Extradition Act or the Extradition Clause, and he has not alleged facts showing that he was injured," McGeachy v. Doe, No. 10-3342, 2011 WL 2182728, at *4 (D.N.J. June 2, 2011), the Court will dismiss all claims related to the extradition proceedings for failure to state a claim upon which relief may be granted.[3] The Court declines to exercise supplemental jurisdiction over related state law claims. 28 U.S.C. § 1367(c)(3).

The Court will also dismiss Plaintiff's request for declaratory judgments. "The purpose of a declaratory judgment is to 'declare the rights of litigants.' The remedy is thus by definition prospective in nature." CMR D.N. Corp. v. City of Phila., 703 F.3d 612, 628 (3d Cir. 2013) (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995)). Declaratory judgments "cannot be issued to address past wrongs." Parkell v. Senato, 704 F. App'x 122, 125 (3d Cir. 2017). The Court will

---

[3] The Court also notes that Defendant Cornelius has absolute prosecutorial immunity for claims arising from the extradition proceedings. See Rivera, 350 F. App'x at 708 (holding prosecutor's "efforts to initiate extradition proceedings against [plaintiff] are prosecutorial in nature and entitle her to immunity from liability"); Burke v. MacArthur, No. 15-6093, 2015 WL 5970725, at *4 (D.N.J. Oct. 13, 2015) ("Absolute immunity also attaches to a prosecutor's activity of seeking extradition.").

dismiss Plaintiff's requests for declaratory judgments as he does not request any prospective relief.

C.  Motion for Pro Bono Counsel

Plaintiff moves for the appointment of pro bono counsel. ECF No. 2. Appointment of counsel is a privilege, not a statutory or constitutional right, Brightwell v. Lehman, 637 F.3d 187, 192 (3d Cir. 2011), and is governed by the factors enumerated in Tabron v. Grace, 6 F.3d 147 (3d Cir. 1993). In determining whether to appoint counsel, "the district court must consider as a threshold matter the merits of the plaintiff's claim." Tabron, 6 F.3d at 155. The Court is proceeding Plaintiff's denial of medical care claims; therefore, the complaint satisfies this threshold inquiry. The Court must now consider: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf. See id. at 155-56, 157 n.5; see also Cuevas v. United States, 422 F. App'x 142, 144-45 (3d Cir. 2011) (reiterating the Tabron factors).

Plaintiff's motion simply recites the Tabron factors:

14

1. The Plaintiff is indigent and unable to afford counsel.
2. The issues involved in this case are complex.
3. The Plaintiff has a very limited knowledge of the law.
4. The Plaintiff is confined due to Covid-19 restrictions and has limited access to the prison law library and research materials.
5. The interest of jurisprudence demands no less than qualified counsel to present this matter.

ECF No. 2 at 1. The fourth reason no longer applies because Plaintiff appears to have been released from custody. The Court will deny the motion without prejudice, and Plaintiff may reapply for counsel by addressing the Tabron factors by explaining how they apply in his case rather than merely reciting them.

VI. CONCLUSION

For the reasons stated above, the Court will proceed Plaintiff's denial of medical care claims. Plaintiff's claims stemming from the extradition proceedings will be dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii). The motion for counsel will be denied without prejudice.

An appropriate Order follows.


Dated: November 21, 2022                s/ Noel L. Hillman
At Camden, New Jersey                   NOEL L. HILLMAN, U.S.D.J.

15